## George W. Goodale *vs.* Worcester Agricultural Society.

At the trial of an action against an agricultural society, to recover for injuries sustained by one who paid a prescribed fee and thereupon entered for a race held on the defendants' track, for a premium offered by them, at their exhibition, at which a great number of persons, horses and vehicles were present, and, while riding the race on a horse without a saddle, and going at the rate of thirty miles an hour, came into collision with a horse and sulky on the track, (which was only partially fenced,) and thereby was injured, there was conflicting evidence whether the plaintiff was so leaning upon his horse's neck at the time of the collision that he could not see objects in front of him. The defendants requested the judge to rule that if the plaintiff was riding at the rate of thirty miles an hour, on a track only partially inclosed, and surrounded by large numbers of people, and was sitting in such a manner that he could not see ten feet before him or that he could not see and avoid obstructions, he was not in the exercise of due care. The judge refused so to rule; and instructed the jury that, for the plaintiff to recover, he must have been in the exercise of due care, that is, the highest care which men of ordinary prudence would use in the same situation, and if the plaintiff rode as alleged, he must show that in so doing he was in the exercise of due care, having regard to the matter in which he was engaged; that he had a right to believe that the defendants would exercise the highest care which reasonable men could do to prevent any obstructions being on the track, but if, in spite of such care, there was danger of obstructions, he was bound to consider this; that the defendants were bound to adopt such precautions to keep the track clear as men of ordinary prudence would adopt; that it was not enough to order men off the track, but that they should have a force sufficient to keep them off; and that the care must be the highest which could reasonably be exercised in order to prevent those injuries which human foresight could avert; but that it was not enough for the plaintiff to show that there was an obstruction on the track, but he must show that the defendants had failed in their duty, which was to use every effort, which reasonable men could be expected to use, to keep the track clear. *Held*, that the defendants had no ground of exception.

On the trial of an action against an agricultural society to recover for injuries received by one who was riding a race on the defendants' track, alleged to have been caused by the negligence of the defendants in allowing a horse and sulky to be driven on the track, with which he came into collision, a marshal of the defendants, whose duty it was to keep the track clear, having testified that he saw the horse and sulky driven on the track within two seconds before the collision, was asked on cross-examination by the plaintiff if he made any attempt to stop them from going on the track, and replied that he did not. *Held*, that the refusal by the presiding judge to allow the defendants to ask the witness why he did not attempt to stop them afforded no ground of exception.

Tort to recover damages alleged to have been sustained by the plaintiff while engaged in a trial of speed on the defendants' track at their annual exhibition in 1867, by coming in collision with a horse and sulky driven by Ezra W. Marble. After trial in the superior court and verdict for the plaintiff, *Devens*, J. allowed a bill of exceptions substantially as follows:

" It appeared in evidence that prior to said exhibition the defendants had offered a ' premium of $25 for the best exhibition of speed, to saddle, for running horses ; ' that, in accordance with said offer, the plaintiff paid the fee prescribed by the rules of the defendants, and entered his horse for said premium ; that Lot Carpenter was his only competitor for the premium, and that the collision took place while engaged in the trial of speed, at the southwest corner of the track, Marble, at the instant of the collision, coming around the corner from the opposite direction, and from a position in which there was evidence tending to show that he would be necessarily concealed from the view of the parties engaged in the race. The plaintiff contended, and put in evidence tending to show, that he was riding upon a horse without a saddle at the time of the collision, at the rate of thirty miles an hour, in competition with Carpenter's horse ; that, before starting, Marble had been permitted by the officers of the defendants in charge of the grounds and races to be upon the track, and was at said time on the track and driving in a contrary direction to that in which the plaintiff was going, and that the chief marshal, whose duty it was to keep the track clear, knew that Marble was on the track at the time the race was ordered to proceed, and took no measures to remove him. There was also evidence on the part of the defendants tending to show that no such permission had been given to Marble, but that he had been directed to go off the track, and did go off the track and on to the area inclosed by the track ; and that, without leave, he had entered upon the track from said area within two or three rods of the place where the collision occurred ; and among the witnesses called for the defendants who testified to this point was John Sibley, who testified, among other things, in substance that he saw Marble drive off the area on to the track within two seconds of the time the collision occurred ; that he himself, at the time, was acting as one of the marshals whose duty it was to see to it that the track was kept clear while a race was in progress, so far as it was possible for him to do so and that, at the time he saw Marble enter upon the track, he himself was coming from the area upon the track at said place

On cross-examination, he was asked if he made any attempt to stop Marble from going on to the track, and he said he did not. The defendants then asked the witness why he did not attempt to stop him; to which question the plaintiff objected, and the judge excluded it.

" There was also evidence tending to show that the track was only partially fenced, and, where it was fenced, portions of the fence had been torn down by ball players, and had not been restored ; and that at the time of the race and collision there were estimated to be upon the grounds ten thousand persons and several hundred teams. The plaintiff contended and argued to the jury that the fact, if it was so, that Marble was permitted to be on the track at the time of the race, and the fact, if it was so, that the chief marshal knew that Marble was on the track at the time the race was to come off, and took no measures to remove him, and the fact, if it was so, that Marble was seen entering upon the track by Sibley without interference or interruption to prevent him, and the fact, if it was so, that the fence at the time of the race was in the condition above described, were acts of negligence on the part of the defendants which would render them liable in this action.

" There was also evidence tending to show that, at the time of the collision, the plaintiff was sitting upon his horse and leaning forward with his head near the horse's neck, and in such a position that he could not see objects or obstructions which might be ahead of him, and with which he might come in collision. But the plaintiff, on the contrary, testified that he could see ahead ' as far as was to be seen;' and the question whether or not the plaintiff, riding in that position, was in the use of due care, was argued at length to the jury.

" The defendants asked the judge to rule as follows : ' A person riding at the rate of thirty miles an hour upon a horse, in such a position that he cannot see an obstruction ten feet ahead of him, is not in the exercise of due care, and if the plaintiff at the time of the collision was so riding, then he was not in the use of due care, and cannot recover. The plaintiff was bound to use all reasonable precautions to protect himself from acci-

dents liable to occur in the hazardous enterprise in which he was engaged, and if, knowing the possibility of teams and other obstructions getting upon the track, he rode in such a manner that he could not see such obstructions and thereby avoid them, then he was not in the exercise of due care, and cannot recover. A person riding upon a horse at the rate of thirty miles an hour in the position described, on a race course which is not absolutely guarded and fenced so as to prevent persons or animals from entering upon it, at a time when he knows many hundreds of persons and teams are in such a position that they can enter upon it at many points, and thus obstruct his passage, is not in the exercise of due care.'

" The judge refused so to rule, but instructed the jury that the plaintiff, in order to recover, must have been in the use of due and reasonable care, that is, the highest care which men of ordinary care and prudence would use in the same situation; but such care must be commensurate with the danger of the exercises which were to take place, and the risks to which those who participated in them would be subjected if, while travelling at high rates of speed, obstructions by individuals or teams were found upon the track, and whether the plaintiff was, in the use of due care was a question to be determined by the jury, taking into view all the circumstances of the case; but if the plaintiff rode in the way above supposed, he must show the jury that he was, in so doing, in the exercise of reasonable care, having regard to the matter in which he was engaged; that he had a right to believe that the defendants would exercise the highest care which reasonable men could do to prevent any obstructions being upon the track; but if, in spite of such care, there was still danger that there would be obstructions on the track, he was bound to consider this in determining the rate at which, and the mode in which, he would travel; and that, in determining whether or not the plaintiff was in the exercise of due care, it would be proper to consider the mode of riding (as testified to in this case) in such trials as adopted by others, and whether or not the mode adopted by the plaintiff was such as skilful and prudent men would adopt."

The judge further instructed the jury, on a request by the plaintiff, that "the defendants were bound to adopt such precautions to keep the track clear, and prevent persons from driving on during the race, as men of ordinary care and prudence would adopt under similar circumstances, and it was not enough to order men off the track, but they should have had a force sufficient to keep them off, they being bound to use due and proper skill and care to prevent any person engaged in the race from being injured by the ignorant, negligent or reckless acts of the spectators, or persons not engaged in the race ; that the degree of care the defendants were bound to use in such a case as this must be measured by the extent of peril to human life and limb which would be occasioned by neglect, and must therefore be the highest which may reasonably be exercised in order to prevent those injuries which human foresight could avert;" but he also instructed them that "the defendants were not bound at all events to keep the track clear, and the plaintiff did not make out his case by only showing that there was an obstruction on the track, but he must show that the defendants had in some way failed in their duty, which was to use every effort which reasonable men could be expected to use to keep the track clear."

*G. F. Verry & F. A. Gaskill,* for the defendants.

*H. C. Rice,* (*W. W. Rice* with him,) for the plaintiff.

CHAPMAN, C. J. By the Gen. Sts. *c.* 167, § 9, all racing, running, trotting or pacing of any horse or other animal for a purse or stake is declared to be unlawful; and all persons engaged in it, or aiding or abetting the same, are subject to fine or imprisonment. But by the St. of 1865, *c.* 67, this section is not to be so construed as to make unlawful trials of the speed of horses for premiums offered by legally constituted agricultural societies. The defendants are such a society, and had offered a premium of $25 for the best exhibition of the speed of running horses at their annual exhibition on their own grounds, where they had a track for the purpose. The plaintiff and Carpener had entered into a competition for this premium, and the society had received from the plaintiff a fee for the privilege. It was to be upon their race course, and it must have been implied

that the plaintiff's horse was to have an opportunity to run at his highest speed. Obstructions upon the track would endanger his life; and, as he must be guiding his horse and urging him on, he could do but little towards avoiding obstructions. The duty of keeping spectators from the track would devolve upon the defendants, and not upon him; and the circumstances of the case would require of them a high degree of care.

The instructions prayed for by the defendants were properly refused, for the legal propositions stated in them are not correct, nor are they applicable to the whole case. The rule of law in respect to the use of care, which has been sanctioned by the court in *Todd* v. *Old Colony & Fall River Railroad Co.* 7 Allen, 207, and other cases, is, that it must be reasonable care, adapted to the circumstances of the case. It applies equally to both parties. When the degree of care which was required, or which was used, is to be inferred from a variety of circumstances, or from conflicting evidence, the case should be submitted to the jury under instructions from the court; and it is proper, and often important, that the instructions should refer to the circumstances appearing in evidence, in order that the jury may apply the general rule properly.

In this case, it is obvious that the circumstances in which the plaintiff was placed were materially different from those in which the defendants and their officers were placed. Although the statement contained in the instructions, that the plaintiff had a right to believe that the defendants would exercise the highest care which reasonable men could do to prevent any obstructions being upon the track, may be too strong, taken by itself, yet the statement of the rule, and of its application to the case, which was adopted at the close of the instructions, in conformity with the plaintiff's prayer for instructions, was in substantial conformity with the general principle, in its application to the circumstances of the case, and on the whole we cannot see that the jury would be likely to be misled.

The question to Sibley, why he did not attempt to stop Marble from coming upon the track, was properly excluded; for it might properly have been answered by stating what passed in

his own mind, which would be immaterial. There was no offer to prove any fact in relation to the matter, and therefore it does not appear that any material evidence was excluded.

*Exceptions overruled.*